## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| RUSSELL FULLER, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | Case No. |
| Plaintiff, | ) ) | **INDIVIDUAL CLAIM FOR** |
| v. | ) ) ) | **VIOLATION OF SECTION 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 AND** |
| CHINA FIRE & SECURITY GROUP, INC., XIANGHUA LI, BRIAN LIN, GUOYOU ZHANG, ALBERT MCLELLAND, WEISHE ZHANG, WEIGANG LI, YINQING LI, AMBER PARENT LIMITED, AMBER MERGERCO, INC., and BAIN CAPITAL PARTNERS, LLC, | ) ) ) ) ) ) ) ) | **CLASS REPRESENTATION COMPLAINT FOR BREACH OF FIDUCIARY DUTY** |
| Defendants. | ) | |

Plaintiff, Russell Fuller ("Plaintiff"), by and through his attorneys, alleges upon information and belief as follows:

### SUMMARY OF THE ACTION

1.     This is both an individual action and a shareholder class action brought by Plaintiff on behalf of holders of the common stock of China Fire & Security Group, Inc. ("China Fire" or the "Company") to enjoin the acquisition of the publicly-owned shares of China Fire common stock by Amber Parent Limited ("Amber"), an affiliate of funds managed by Bain Capital Partners, LLC ("Bain Capital"), and its wholly-owned subsidiary, Amber Mergerco, Inc., (collectively, Amber, Amber Mergerco, Inc. and Bain Capital are sometimes collectively referred to herein as "Bain") as detailed herein (the "Proposed Transaction").

2.     On May 20, 2011, China Fire and Amber entered into a definitive Agreement and Plan of Merger ("Merger Agreement"), whereby Amber, through its-wholly owned subsidiary,

would acquire all outstanding shares of China Fire in a cash merger valued at $9.00 per share, a transaction valued at approximately $265.5 million.

3.     In pursuing the plan to induce China Fire shareholders to approve the Proposed Transaction, each of the defendants violated applicable federal law by directly breaching and/or aiding the other defendants' breaches of their fiduciary duties of loyalty, due care, diligence, good faith and fair dealing, independence, and candor.

4.     The Proposed Transaction is unfair and undervalued.  Indeed, China Fire achieved the following accomplishments in 2010:  (i) as of December 31, 2010, the Company had a backlog valued at $151.3 million; (ii) in February, China Fire signed a $92 million contract with Wuhan Iron and Steel; (iii) in July, the Company won a $10 million contract with China Nuclear Power; (iv) in the end of December, the Company received preliminary contract win notice of $8.2 million from Beijing Infrastructure Investment Co., the Company's first contract win in China's subway industry; and (v) the Company successfully enriched its product portfolio, including infrared and ultraviolet composite flame detectors, electric fire monitoring systems and high-pressure water mist fire-extinguishing systems.

5.     Additionally, certain of the Individual Defendants will receive lavish compensation, benefits or change of control and severance benefits in the Proposed Transaction. For example, the Individual Defendants will receive (i) cash payments with respect to stock options that have an exercise price of less than $9.00 per share; (ii) cash payments with respect to shares of restricted stock and other Company common stock held by them; (iii) an expected ownership of equity interests in the predecessor company; (iv) Weigang and Lin will enter into new three-year employment agreements (with two conditional one-year extensions) with Amber or one of its subsidiaries following the Proposed Transaction; (v) compensation to certain Board

members for serving on the special committee; and (vi) continued indemnification and liability insurance following completion of the Proposed Transaction.

6.　　Accordingly, the $9.00 per share price agreed to in the Proposed Transaction is inadequate and is designed to serve the Individual Defendants, rather than achieve China Fire's potential by staying independent.

7.　　Bain is well aware of China Fire's intrinsic enterprise value.　Knowing that the economy and the Company's performance is recovering, Bain recognized that it had an opportunity to cash in on China Fire's undervalued stock price by acquiring the Company before it felt the full effects of the economic turnaround and reached analyst targets.　As such, Bain, in possession of non-public information regarding China Fire, is taking advantage of its position to acquire the Company at a substantial discount to its true value.　More troubling is that China Fire's Board is allowing Bain to buy the Company on the cheap.

8.　　To ensure the success of the Proposed Transaction, China Fire's Board of Directors ("Board") locked up the deal in favor of Bain by agreeing to impermissible "deal-protection" devices, effectively rendering the Proposed Transaction a *fait accompli*.　For example, the Board agreed to: (i) a 55-day "go-shop" period to window dress the Proposed Transaction, which is illusory given that insiders control over 59 % of the Company's outstanding stock; (ii) a "matching rights" provision that allows Bain to match any competing proposal in the unlikely event that one emerges; (iii) an unreasonable $8.5 million termination fee to be paid to Bain if the Board agrees to a competing proposal; and (iv) a voting agreement whereby certain officers and directors, owning a majority of the Company's shares aggregating approximately 59.1% of the outstanding voting securities of the Company, pledge their support for the Proposed Transaction.

9.      Similarly, in an attempt to induce shareholder approval of the unfair Proposed Transaction, Defendants caused to be filed with the Securities and Exchange Commission ("SEC") an inadequate and misleading preliminary proxy statement Schedule 14A (the "Proxy") on June 10, 2011 in advance of an anticipated shareholder vote by China Fire shareholders.

10.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants (defined below) from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' (defined below) violations of their fiduciary duties of loyalty, good faith, due care, and full and fair disclosure.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C §1331 in that Plaintiff's claims arise in part under the Constitution and laws of the United States, including the Exchange Act [15 U.S.C. §78aa] and 28 U.S.C. §1331.  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because one or more of the defendants, including China Fire, either resides in or maintains executive offices in this District, and a substantial portion of the transactions and wrongs that are the subject of this complaint occurred in substantial part in this District.  Finally, the defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

13.     Plaintiff is, and at all relevant times was, a continuous stockholder of defendant China Fire.  Plaintiff is a resident of Texas.

4

14.     China Fire is a Florida corporation, with its principal executive offices located at B-2508 TYG Center, C2, Dongsanhuanbeilu, Chaoyang District, Beijing 100027, People's Republic of China.  China Fire designs, develops, manufactures, sells, and installs in China fire safety products for the industrial fire safety market.

15.     Defendant Xianghua Li ("Xianghua") has served as a member of this Board since 2008.

16.     Defendant Brian Lin ("Lin") is the Company's Chief Executive Officer ("CEO") and has served as a member of this Board since 2007.

17.     Defendant Guoyou Zhang ("Guoyou") has served as a member of this Board since 2007.

18.     Defendant Albert McLelland ("McLelland") has served as a member of this Board since 2008.

19.     Defendant Weishe Zhang ("Weishe") is the Company's vice president of strategic planning and has served as a member of the Board since 2009.

20.     Defendant Weigang Li ("Weigang") is presently Chairman of the Board and has served as a member of the Board since 2010.

21.      Defendant Yinqing Li ("Yinqing") is presently a member of the Board.

22.     Amber is a company incorporated in the Cayman Islands and an affiliate of Bain Capital Asia Fund, L.P. and Bain Capital Fund X, L. P.

23.     Amber Mergerco, Inc. is a Florida corporation and a direct, wholly-owned subsidiary of Amber formed to effectuate the Proposed Transaction.

24.     Bain Capital is a Delaware corporation with its executive offices located in Boston, Massachusetts.  Bain Capital is a private investment firm with approximately $65 billion in assets under management.

25.     Defendants in paragraphs 15 through 21 are collectively referred to hereinafter as the "Individual Defendants."

26.     Each of the Individual Defendants herein is sued individually, and as an aider and abettor, as well as in his or her capacity as an officer and/or director of the Company, and the liability of each arises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

27.     Collectively, the Individual Defendants, China Fire, Amber, Amber Mergerco, Inc., and Bain Capital are referred to herein as the "Defendants."

### THE FIDUCIARY DUTIES OF THE
### INDIVIDUAL DEFENDANTS UNDER STATE LAW

28.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Plaintiff and the other shareholders of China Fire and owe Plaintiff and the other members of the Class (defined herein) the duties of good faith, fair dealing, loyalty and full and candid disclosure.

29.     By virtue of their positions as directors and/or officers of China Fire, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause China Fire to engage in the practices complained of herein.

30.     Each of the Individual Defendants is required to act in good faith, in the best interests of the Company's shareholders and with such care, including reasonable inquiry, as would be expected of an ordinarily prudent person.  In a situation where the directors of a publicly traded company undertake a transaction that may result in a change in corporate control,

the directors must take all steps reasonably required to obtain adequate value for shareholders and its constituents rather than use a change of control to benefit themselves, and to disclose all material information concerning the proposed change of control to enable the shareholders to make an informed voting decision.   To diligently comply with this duty, the directors of a corporation may not take any action that:

        (a)      adversely affects the value provided to the corporation's shareholders;

        (b)      contractually prohibits them from complying with or carrying out their fiduciary duties;

        (c)      discourages or inhibits alternative offers to purchase control of the corporation or its assets;

        (d)      will otherwise adversely affect their duty to search for and secure the best value reasonably available under the circumstances for the corporation's shareholders; or

        (e)      will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

31.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated duties owed to Plaintiff and the other shareholders of China Fire, including their duties of loyalty, good faith and independence, insofar as they, *inter alia*, engaged in self-dealing and obtained for themselves personal benefits, including personal financial benefits, not shared equally by Plaintiff or the other shareholders of China Fire common stock.

## CLASS REPRESENTATION ALLEGATIONS

32.    Plaintiff brings the state law claims in Counts III and IV pursuant to Rule 23 on behalf of himself and as a class action, on behalf of all holders of China Fire common stock who are being and will be harmed by Defendants' actions described below (the "Class").  Excluded

from the Class are Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants.

33.     This action is properly maintainable as a class action because:

(a)     The Class is so numerous that joinder of all members is impracticable.  As of May 10, 2011, there were 27,855,934 shares of China Fire common stock issued and outstanding.  The actual number of public shareholders of China Fire will be ascertained through discovery;

(b)     There are questions of law and fact which are common to the Class, including *inter alia,* the following:

(i)  whether the Individual Defendants aided and abetted by Bain, have breached their fiduciary duties of undivided loyalty, independence or due care with respect to plaintiff and the other members of the Class in connection with the Proposed Transaction;

(ii)  whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(iii)  whether the Individual Defendants have disclosed all material information regarding the Proposed Transaction; and

(iv)  whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction complained of herein consummated; and

(c)      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

(d)      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e)      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(f)      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**A.**      **Background**

34.      China Fire is a leading total solution provider of industrial fire protection systems in China.  Leveraging on its proprietary technologies, China Fire is engaged primarily in the design, manufacturing, sales, and maintenance services of a broad product portfolio including detectors, controllers, and fire extinguishers.  The Company owns a comprehensive portfolio of patents covering fire detection, system control and fire extinguishing technologies, and via its nationwide direct sales force, has built a solid client base including major companies in iron and steel, power, petrochemical and transportation industries throughout China.

35.      The Company was formed as a result of a share exchange completed on October 27, 2006 between Unipro Financial Services, Inc., a Florida corporation and the shareholders of

China Fire Protection Group, Inc., a limited liability company organized under the laws of the British Virgin Islands.

36.     Chine Fire, as it is now known, is engaged in the design and sale of a variety of fire safety products for the industrial and special purpose industries.  China Fire claims to have been ranked as the leading Chinese Industrial fire safety company by the China Association for Fire Prevention, and the first company in China to specialize in industrial fire safety.

37.     As noted in China Fire's Form 10-K for the fiscal year ended December 31, 2009, certain officers, directors and principal shareholders owned a majority of the Company's outstanding shares at that time, representing approximately 61% of the Company's outstanding common stock.

**B.      The Proposed Transaction**

38.     On May 20, 2011, China Fire issued a press release announcing the Proposed Transaction which stated:

> BEIJING, May 20, 2011 -- China Fire & Security Group, Inc. (Nasdaq: CFSG) ("China Fire" or the "Company"), a leading total solution provider of industrial fire protection systems in China, today announced that it has entered into a definitive merger agreement with Amber Parent Limited ("Parent"), an affiliate of funds managed by Bain Capital Partners, LLC ("Bain Capital"), and Amber Mergerco, Inc., a wholly-owned subsidiary of Parent ("Merger Sub").
>
> Under the terms of the merger agreement, each share of the Company's common stock issued and outstanding immediately prior to the effective time of the merger will be cancelled in exchange for the right to receive $9.00 in cash, except for (i) shares beneficially owned by the Company, any subsidiary of the Company, Parent or Merger Sub, including shares to be contributed to Parent or Merger Sub by certain special purpose companies (the "Rollover Investors") related to Mr. Weigang Li, the Chairman of the Board, Mr. Brian Lin, the Chief Executive Officer of the Company, and Mr. Weishe Zhang, the Vice President of Strategic Planning of the Company, which will be cancelled without receiving any consideration and (ii) shares held by stockholders who have properly exercised and perfected appraisal rights. The offer represents a total consideration of approximately $265.5 million (taking into account the contribution to be made by the Rollover Investors), a 44% premium over the Company's closing price on

March 4, 2011 (which represents the "undisturbed" share price prior to the Company's announcement regarding receipt of a "going private" proposal) and a 38% premium over the Company's 90-trading day volume weighted average price calculated as of May 19, 2011.

The Company's Board of Directors, acting upon the unanimous recommendation of the Special Committee formed by the Board of Directors, approved the merger agreement and resolved to recommend that the Company's shareholders vote to adopt the merger agreement. The Special Committee, which comprises solely directors unrelated to any of Parent, Merger Sub, Bain Capital or any of the management members of the Company, negotiated the terms of the merger agreement with the assistance of its financial and legal advisors.

The merger, which is currently expected to close before November 15, 2011, is subject to the adoption of the merger agreement by an affirmative vote of holders of at least 75% of the Company's outstanding shares of common stock and an affirmative vote of holders of more than 50% of the Company's outstanding shares of common stock held by the disinterested shareholders of the Company, as well as certain other customary closing conditions. Mr. Weigang Li and certain other members of management, who collectively own a total of 16,789,100 shares of common stock and 127,500 shares of restricted common stock, representing 59.14% of the total voting power of the Company, have agreed to vote to adopt the merger agreement.

The Company will schedule a meeting of its shareholders for the purpose of voting on the adoption of the merger agreement. If completed, the merger will, under Florida law, result in the Company becoming a privately-held company and its shares would no longer be listed on the Nasdaq Capital Market.

Barclays Capital is serving as the exclusive financial advisor to the Special Committee. Shearman & Sterling LLP is serving as U.S. legal advisor to the Special Committee and Bilzin Sumberg Baena Price & Axelrod LLP is serving as Florida legal advisor to the Special Committee. Bank of America Merrill Lynch, The Hongkong and Shanghai Banking Corporation Limited and Citigroup Global Markets Asia Limited are serving (themselves or through their affiliates) as financial advisors to Bain Capital as well as underwriters, bookrunners and mandated lead arrangers of the debt facilities. Kirkland & Ellis International LLP is serving as U.S. and U.K. legal advisor to Bain Capital. Davis Polk & Wardwell LLP is serving as U.S. legal advisor to Barclays Capital. Allen & Overy is serving as U.S. and U.K. legal advisor to the underwriters, bookrunners and mandated lead arrangers. DLA Piper and Han Kun Law Offices are serving as international and PRC counsel to Mr. Weigang Li.

39.     The Proposed Transaction is unfair and undervalued.   China Fire itself has

confirmed its expectations for growth.  As noted above, the Company achieved the following

accomplishments in 2010:  (i) as of December 31, 2010, the Company had a backlog valued at $151.3 million; (ii) in February, China Fire signed a $92 million contract with Wuhan Iron and Steel; (iii) in July, the Company won a $10 million contract with China Nuclear Power; (iv) in the end of December, the Company received preliminary contract win notice of $8.2 million from Beijing Infrastructure Investment Co., the Company's first contract win in China's Subway industry; and (v) the Company successfully enriched its product portfolio, including infrared and ultraviolet composite flame detectors, electric fire monitoring systems and high-pressure water mist fire-extinguishing systems.

40.     In addition, certain of the Individual Defendants will receive lavish compensation, benefits or change of control and severance benefits.  For example, certain Individual Defendants will receive the following, among others:  (i) cash payments with respect to stock options that have an exercise price of less than $9.00 per share.  Specifically, Weigang stands to gain $1,103,500, Lin stands to gain $1,819,500.00, Weishe stands to gain $812,000, and Guoyou stands to gain $8,980; (ii) cash payments with respect to shares of restricted stock and other Company common stock held by them. Specifically, Weigang stands to gain $472,500 and Lin stands to gain $675,000; (iii) an expected ownership of equity interests in Bain; (iv) Weigang and Lin will enter into  new three-year employment agreements (with two conditional one-year extensions) with Bain or one of its subsidiaries following the Proposed Transaction; (v) compensation to those Board members who served on the special committee; and (vi) continued indemnification and liability insurance following completion of the Proposed Transaction.

41.     Furthermore, the Proxy admits that the Company's directors and executive officers have interests in the Proposed Transaction that are different from, or in addition to, the interests of China Fire's shareholders generally.  Defendants, Weigang, Lin, and Weishe ("the

"Rollover Defendants") agreed to contribute a portion of the Company shares owned by them in exchange for equity interests of the successor entity.  The Proxy states the following:

> Certain special purpose companies (collectively, the "**Rollover Investors**") controlled by [Weigang] in whole or in part, [Lin], and [Weishe] have agreed with [Amber] to contribute to [Amber] a portion of the shares of Company common stock owned by them, aggregating approximately 19.9% of the outstanding shares of Company common stock as of June 8, 2011 (the "**Rollover Shares**"), in exchange for a certain equity interest in [Amber] at the same price per share as is paid by the shareholders of [Amber] affiliated with the Sponsors at closing.  In addition, Li Brothers Holdings, Inc. ("**Li Brothers**"), a Rollover Investor controlled in part by [Weigang], agreed to contribute an additional portion of the Company common stock owned by it representing approximately 4.3% of the outstanding shares of the Company common stock as of June 8, 2011 (the "**Cash-Out Shares**") to Merger Sub in exchange for a per share amount equal to the per share merger consideration, which will be paid after our shareholders generally receive their merger consideration.

42.     In essence, the Proposed Transaction allows defendants Weigang Li, Lin and Zhang, through their controlled entities, to reap the benefits that rightfully belong to China Fire's public shareholders by obtaining an equity position following the consummation of the Proposed Transaction.

43.     Because the Individual Defendants and officers of China Fire control a significant portion of the Company's outstanding common stock representing almost 60% in the aggregate, no third party will likely bid for China Fire.  Thus, the "go shop" is totally illusory, and serves only to provide the appearance of fairness in a transaction that is anything but fair.

44.     Moreover, on October 7, 2010, the Board created a special committee consisting of Defendants McLelland, Xianghua Li and Zhang (the "Special Committee"), but it is evident the process engaged in by the Special Committee was flawed.  The Special Committee retained Barclays Capital Asia Limited as its financial advisor, which constitutes a blatant conflict of interest.  Bain, one of the owners of Dunkin' Brands Group Inc. chose Barclays Capital to serve

as one of the underwriters for an initial public offering of Dunkin' Brands, according to a May 4, 2001 article on *Reuters*.

45.     Accordingly, the $9.00 per share price agreed to in the Proposed Transaction is inadequate and is designed to serve the Individual Defendants, rather than achieve China Fire's potential by staying independent and as a standalone operation.

**C.     The Preclusive Deal Protection Devices**

46.     As part of the Merger Agreement, the Individual Defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait'accompli* and ensure that no competing offers will emerge for the Company.

47.     Although the Proposed Transaction provides for a 55-day "go-shop" period, that period is illusory, given that certain officers and directors of the Company control a majority of the Company's outstanding common stock.  At the conclusion of this period, the Company may continue to engage in discussions for a limited 15-day period if, and only if, the acquisition proposal is submitted by what the Merger Agreement defines a "Continuing Party."  The Merger Agreement defines a "Continuing Party" as follows:

> [a]ny Person or group (other than Parent or Merger Sub) (i) from whom the Company has received, after the date of this Agreement and prior to the Solicitation Period End Date, (x) a written Acquisition Proposal that the Special Committee determines, as of the Solicitation Period End Date, in good faith (after consultation with it independent financial advisor and outside legal counsel) is bona fide and would reasonably be expected to result in a Superior Proposal and (y) a written representation by such Person or group to the effect that such Person and the other members of such group, if any, who were members of such group immediately prior to the Solicitation Period End Date will provide at least 50% of the equity financing (measured by both voting power and value) to be provided by such group at all times from the date of the making of the Acquisition Proposal through the consummation of the Acquisition Proposal, and (ii) is engaged in good faith discussions with the Company with respect to such Acquisition Proposal immediately prior to the Solicitation Period End Date.

48.     Thereafter, the Merger Agreement enforces a strict "no solicitation" provision prohibiting the members of the China Fire Board from directly or indirectly soliciting alternative acquisition proposals or business combinations.  Specifically, the Merger Agreement precludes the Board from participating in any discussions or negotiations regarding, or furnish any information with respect to, any takeover proposal by a third party, thereby precluding any Company personnel from attempting to procure a price in excess of the amount offered by Amber.

49.     Similarly, the Merger Agreement provides a matching rights provision whereby the Company must notify Amber of any unsolicited competing bidder's offer.  Then, if and only if the Board determines that the competing offer constitutes a "Superior Proposal," Amber is granted the right to amend the terms of the Merger Agreement to make a counter-offer that the Company must consider in determining whether the competing bid still constitutes a "Superior Proposal."

50.     In addition to the no-solicitation and matching rights provisions, the Merger Agreement includes an unreasonable $8.5 million termination fee, representing over 3% of the equity value of the Proposed Transaction which is unreasonably high given that no other bidders are likely to emerge.  The aggregate effect of these preclusive deal protection devices, viewed against the backdrop of the fact that the majority ownership of the outstanding common stock is held by corporated insiders, supports an inference that the Board was not acting in good faith in approving the terms of the Merger Agreement.  In a further effort to lock up the Proposed Transaction, the Individual Defendants have also entered into Voting Agreements whereby they committed to vote their shares in favor of the Proposed Transaction.  Specifically, Weigang, Lin, and Weishe, along with other related investment companies (collectively, the "Voting

Shareholders") have irrevocably and unconditionally granted the right to vote or cause to be voted 16,789,100 shares of Company common stock and 127,500 shares of restricted stock owned by them, aggregating approximately 59.1% of the outstanding voting securities of the Company as of June 8, 2011, in favor of the approval of the Proposed Transaction and against any acquisition proposal from any third party without regard to its terms.

51.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

**D.     The Materially Misleading And/Or Incomplete Proxy**

52.     In order to secure shareholder approval of this unfair deal, China Fire and the Individual Defendants filed with the SEC a materially misleading and incomplete Proxy.  The Proxy fails to address the misstatements and omissions raised by Plaintiff herein.  The Proxy recommends that China Fire shareholders vote in favor of the Proposed Transaction omits and/or misrepresents material information about the unfair sale process, the unfair consideration, and the true intrinsic value of the Company.  Specifically, the Proxy omits/or misrepresents the material information set forth below in contravention to Sections 14(a) and 20(a) of the Exchange Act, rendering shareholders unable to cast an informed vote on the Proposed Transaction.

53.     The omitted information described herein, if and when disclosed, would significantly alter the totality of information available for consideration by the average China Fire shareholder.  As such, if China Fire shareholders vote based upon the inadequate Proxy they will be irreparably harmed.

54.     Furthermore, the Proxy fails to disclose the sales process and negotiations with bidders leading up to the Proposed Transaction.  For example, the Proxy completely fails to disclose the following:

(a)     The rationale for Barclays Capital soliciting potential buyers for only one day (October 19, 2010) and, at that time, contacting only nine potential strategic buyers and one potential financial buyer;

(b)     The Board's rationale for terminating discussions with a "multinational company" in April 2010 that expressed interest in acquiring all outstanding shares of the Company;

(c)     The Board's basis for entering into an exclusivity agreement with Bain Capital in February 2011 for a period of six weeks while due diligence and negotiations were conducted;

(d)     The Board's basis for entering into another exclusivity agreement with Bain Capital in April 2011 for a period of three weeks while negotiations continued;

(e)     The Board's rationale for accepting Bain Capital's initial offer to acquire all of the outstanding shares of the Company at a price of $9.00 per share;

(f)     The original termination fee proposed by Bain Capital, before it was allegedly reduced to $8.5 million; and

(g)     A detailed explanation of the "conflict of interest" between the public shareholders and the Rollover Investors" discussed at the May 18, 2011 meeting;

17

(h)     The Proxy fails to disclose the selection process of Barclays Capital, financial advisor to China Fire.

55.     The information requested above is necessary for one to be able to evaluate and understand the sales process and analysis rendered in connection with the Proposed Transaction. Therefore, the aforementioned omitted information is highly relevant and material to China Fire shareholders.

56.     Accordingly, because the foregoing material misstatements and omissions represent a violation of federal law, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will suffer absent judicial intervention.

## COUNT I

### On Behalf of Plaintiff for Violations of Section 14(a) of the Exchange Act Against the Individual Defendants and China Fire

57.     Plaintiff brings this Exchange Act claim on behalf of himself as an individual.

58.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein, except for paragraphs 32-33.

59.     Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Transaction.

60.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with shareholders shall not contain "any statement which, at the time an in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

61.     Specifically, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care,

Defendants should have known that the Proxy is materially misleading and omits material facts that are necessary to render it non-misleading.

62.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  As a direct and proximate result of Defendants' conduct, Plaintiff will be irreparably harmed.

## COUNT II

**On Behalf of Plaintiff for Violations of Section 20(a) of the Exchange Act
Against the Individual Defendants and China Fire**

63.     Plaintiff brings this Exchange Act claim on behalf of himself as an individual.

64.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein, except for paragraphs 32-33.

65.     The Individual Defendants acted as controlling persons of China Fire within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of China Fire, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

66.     Each of the Individual Defendants and China Fire were provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

67.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

68.     China Fire also had direct supervisory control over the composition of the Proxy and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy.  China Fire, in fact, disseminated the Proxy and is, thus, directly responsible for materially misleading shareholders because it permitted the materially misleading Proxy to be published to shareholders.

69.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants and China Fire were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants and China Fire participated in drafting and/or gave their input on the content of those descriptions.

70.     By virtue of the foregoing, the Individual Defendants and China Fire have violated Section 20(a) of the Exchange Act.

71.     As set forth above, the Individual Defendants and China Fire had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as

controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff will be irreparably harmed.

## COUNT III

**On Behalf of Plaintiff and the Class for Breach of Fiduciary Duties
Against the Individual Defendants**

72.     Plaintiff repeats and realleges paragraphs 1-56 set forth herein.

73.     The Individual Defendants have violated fiduciary duties of care, loyalty, candor and good faith owed to public shareholders of China Fire.

74.      By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in China Fire.

75.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to the shareholders of China Fire because, among other reasons, they failed to take steps to obtain adequate value of China Fire to its public shareholders and constituents and to fully advise China Fire shareholders of the material information they need to cast a fully-informed vote..  The Individual Defendants dominate and control the business and corporate affairs of China Fire, and are in possession of private corporate information concerning China Fire's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of China Fire which makes it inherently unfair for them to benefit their own interests to the exclusion of obtaining adequate shareholder and constituent value.

21

76.     Moreover, the Individual Defendants have failed to fully disclose to Plaintiff and the Class all material information necessary to make an informed decision regarding the Proposed Transaction.

77.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

78.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of China Fire's assets and businesses and have been and will be prevented from obtaining a fair price for their common stock.

79.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

80.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which the Individual Defendants' actions threaten to inflict.

## COUNT IV

**On Behalf of Plaintiff and the Class**
**Against China Fire, Amber, Amber Mergerco, Inc. and Bain for**
**Aiding and Abetting the Individual Defendants' Breaches of Fiduciary Duty**

81.     Plaintiff incorporates by reference and realleges paragraphs 1-56 and 72-80 contained above, as though fully set forth herein.

82.     China Fire and Amber, Amber Mergerco, Inc and Bain have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in

breach of their fiduciary duties to China Fire's public shareholders, and have participated in such breaches of fiduciary duties.

83.     China Fire, Amber, Amber Mergerco, Inc and Bain knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.  In so doing, these defendants rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties by inter alia, entering into the Voting Agreements and agreeing to the preclusive deal protection devices in order to protect their interests in the Proposed Transaction.

84.     Plaintiff has no adequate remedy at law.

## JURY TRIAL DEMANDED

85.     Plaintiff hereby demands trial by jury on all issues so triable

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands injunctive relief in his favor and in favor of the Class and against Defendants as follows:

A.     Declaring that this action is properly maintainable as a Class action and certifying Plaintiff as Class representative;

B.     Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain a Proposed Transaction agreement providing the best possible terms for shareholders;

C.     Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, including the deal protection devices and Voting Agreements or granting Plaintiff and the Class rescissory damages;

D.      Directing the Defendants to account to Plaintiff  and the Class for all damages suffered as a result of the  Defendants' wrongdoing;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.      Granting such other and further equitable relief as this Court may deem just and proper.

Dated: June 22, 2011                          **FARUQI & FARUQI, LLP**

By: _____*/s/ Emily C. Komlossy*_____
       Emily C. Komlossy  (FL Bar No. 007714)
3595 Sheridan Street, Suite 206
Hollywood, FL 33021
Tel:  (954) 239-0280
Fax:  (954) 239-0281
Email: ekomlossy@faruqilaw.com


**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
Juan Monteverde
369 Lexington Avenue, 10th Fl.
New York, NY 10017
Tel.: (212) 983-9330
Fax: (212) 983-9331
Email: jmonteverde@faruqilaw.com