UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| RUSSELL FULLER, On Behalf of Himself and All Others Similarly Situated, | ) ) ) ) | |
| Plaintiffs, | ) | CASE NO. 11-61400-CIV (WPD) |
| vs. | ) | |
| CHINA FIRE & SECURITY GROUP, INC., XIANGHUA LI, BRIAN LIN, GUOYOU ZHANG, et al., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' AMENDED MOTION TO STAY THE CONSOLIDATED ACTIONS
AND INCORPORATED MEMORANDUM OF LAW**

CASE NO. 11-61400-CIV (WPD)

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 3

ARGUMENT ..................................................................................................................... 8

    I.      The PSLRA's Automatic Stay Applies Because Plaintiffs Assert Claims Under the Exchange Act .............................................................................. 8

    II.     In Addition to the Automatic Stay under the PSLRA, the Court Should Stay Proceedings Pursuant to Its Inherent Authority .................................. 11

          A.     The First Two Factors Are Inapplicable .................................................. 15

          B.     The Remaining Factors Favor Stay ......................................................... 15

CONCLUSION ................................................................................................................. 20

# **TABLE OF AUTHORITIES**

## **CASES**

*Allied Mach. Serv., Inc. v. Caterpillar Inc.*, 841 F. Supp. 406 (S.D. Fla. 1993) ..........................16

*Ambrosia Coal & Constr. Co. v. Morales*, 368 F.3d 1320 (11th Cir. 2004) ....................12, 13, 14

*AvMed Inc. v. Sheridan Healthcorp, Inc.*, No. 09-23851-CIV, 2010 WL 3008811
    (S.D. Fla. July 28, 2010) ........................................................................................................17

*Band v. Ginn Companies LLC*, No. 09-cv-792-J-25TEM, 2011 WL 807396
    (M.D. Fla. Mar. 2, 2011)..........................................................................................................9

*Boettcher v. IMC Mort. Co.*, 871 So. 2d 1047 (Fla. 2d DCA 2004)............................................18

*Bosdorf v. Beach*, 79 F. Supp. 2d 1337 (S.D. Fla. 1999)...................................................16, 19, 20

*In re Carnegie Int'l Corp. Sec. Litig.*, 107 F. Supp. 2d 676 (D. Md. 2000)....................................9

*In re Cogent, Inc. S'holder Litig.*, 7 A.3d 487 ( Del. Ch. 2010) ....................................................18

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) .......... *passim*

*In re Countrywide Fin. Corp. Deriv. Litig.*, 542 F. Supp. 2d 1160 (C.D. Cal. 2008)...................10

*In re DPL Inc. Sec. Litig.*, 247 F. Supp. 2d 946 (S.D. Ohio 2003)..................................................9

*De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003).....................................................10

*Exxon Mobile Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005) .................................19

*Fisher v. Kansas*, No. 06-cv-1187, 2006 WL 2239038 (E.D.N.Y. Aug. 4, 2006) ..........................9

*Hilliard v. Black*, 125 F. Supp. 2d 1071 (N.D. Fla. 2000)...............................................................9

*Int'l Ins. Co. v. Johns*, 874 F.2d 1447 (11th Cir. 1989) .................................................................18

*Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640, 2011 WL 835811
    (N.D. Cal. Mar. 4, 2011).........................................................................11, 18, 19, 20

*Krieger v. Atheros Communications, Inc.*, No. 11-CV-00640 (N.D. Cal. Apr. 22, 2011) ...........11

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ...................................................................................12

*Leaderstat, LLC v. Abisellan*, No. 8:06-cv-1337, 2007 WL 5433486
    (M.D. Fla. Jan. 24, 2007)..................................................................................................15, 17

*Lee Mem. Health Sys. v. Med. Sav. Ins. Co.*, No. 2:04-cv-445, 2006 WL 3231388
    (M.D. Fla, Nov. 7, 2006) .................................................................................15

*Lisa, S.A. v. Mayorga*, 232 F. Supp. 2d 1325 (S.D. Fla. 2002) .....................................13

*Lops v. Lops*, 140 F.3d 927 (11th Cir. 1998) ................................................................19

*Merrill Lynch Pierce, Fenner & Smith v. Dabit*, 547 U.S. 71 (2006) .............................8

*Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994 (11th Cir. 2004) ........................14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ..........................14, 20

*Newby v. Enron Corp.*, 338 F. 3d 467 (5th Cir. 2003).....................................................9

*Rambaran v. Park Square Enters., Inc.*, No. 6:08-cv-247-Orl-19GJK,
    2008 WL 4371356 (M.D. Fla. Sept. 22, 2008) ...............................12, 14, 15, 17

*Rivera v. Healthcare Services Grp.*, No. 8:10-cv-1019, 2010 WL 2553606
    (M.D. Fla. June 23, 2010) ...............................................................................18

*Romine v. Compuserve Corp.*, 160 F.3d 337 (6th Cir. 1998) .......................................16

*SG Cowen Sec. Corp. v. U.S .Dist. Ct. for the N. Dist. of Cal.*, 189 F. 3d 909
    (9th Cir. 1999)...............................................................................................10

*Santiago v. Wm. G. Roe & Sons*, No. 8:07-CV-1786, 2008 WL 2944921
    (M.D. Fla. July 29, 2008)................................................................................10

*Shallal v. Elson*, No. 98-8739-CIV, 1999 WL 33957906 (S.D. Fla. Apr. 12, 1999)....................16

*Shell Oil Co. v. Altina Assocs., Inc.*, 866 F. Supp. 536 (M.D. Fla. 1994).....................................12

*Sides v. Simmons*, No. 07-80347-CIV, 2007 WL 3344405 (S.D. Fla. Nov. 7, 2007) .............15, 16

*TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438 (1976) ............................................18

*In re Trump Hotel S'holder Deriv. Litig.*, No. 96 Civ. 7820, 1997 WL 442135
    (S.D.N.Y. Aug. 5, 1997) .................................................................................10

*Venezia Resort, LLC v. Favret*, No. 3:07CV74/MCR/EMT, 2007 WL 1364342
    (N.D. Fla. May 8, 2007)...............................................................................17, 18

## STATUTES

15 U.S.C. § 78u-4(b)(3)(B) ............................................................................................... *passim*

28 U.S.C. § 1367(c) ......................................................................................................10

Fed. R. Civ. P. 23(a) ......................................................................................................19

H.R. Conf. Rep. No. 104-369, p.31 (1995) ...................................................................9

## <u>PRELIMINARY STATEMENT</u>

This motion addresses two paradigmatic "tag along" actions, consolidated pursuant to this Court's August 2, 2011 Order, that serve no other purpose than to burden Defendants and this Court with duplicative litigation of claims already being adjudicated in state court. As such, these actions, comprised of lawsuits filed by plaintiffs Fuller and Tessitore (collectively, the "Consolidated Actions"), should be stayed. Like their state-court predecessors, Plaintiffs here seek to enjoin a proposed transaction whereby, subject to shareholder approval, Bain Capital Partners, LLC ("Bain Capital"), through various associated entities, will acquire all outstanding shares of China Fire & Security Group, Inc. ("China Fire" or the "Company"). If approved by a majority of disinterested shareholders, the public shareholders will receive a 44% cash premium for their shares compared to the market price of the shares before public announcement of a possible transaction. No fewer than seven other putative class actions – including one filed almost three months before the earliest of the Consolidated Actions – are now pending in Florida state courts. The operative complaints in all actions, including the Consolidated Actions, stem from the same underlying facts, contain essentially the same substantive allegations, assert substantially similar claims, seek the same relief on behalf of the same putative class (of which Plaintiffs purport to be members), and name some or all of the same defendants. Plaintiffs, however, in a vain effort to differentiate the Consolidated Actions from the earlier-filed actions, assert federal securities law claims echoing disclosure claims already at issue in state court.

The blatant forum shopping and vexatious litigation tactics driving the Consolidated Actions are amply evidenced by Plaintiff Tessitore's circuitous route to this Court. Tessitore initially filed suit in the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida shortly after the issuance of a press release announcing the proposed transaction. Then, realizing he had lost the race to the courthouse to two other putative class plaintiffs who

had already brought substantially identical suits in Broward County, Tessitore abandoned his Palm Beach action and filed a new lawsuit in Broward County. There, he affirmatively sought consolidation of all of the similar class actions in Broward County, to avoid duplication and waste of judicial resources, and urged the Broward County Court to appoint him as lead plaintiff (and his counsel as lead counsel). The Broward County Court agreed with Tessitore on the first point, consolidating six class actions, allowing expedited discovery to proceed, and scheduling a preliminary injunction hearing. But the court disagreed with Tessitore on the second point, appointing a different lead plaintiff (and lead counsel). Tessitore refused to abide by that court's order. Before the ink had dried on the Broward County Court's order appointing another shareholder as lead plaintiff and another law firm as lead counsel in the Broward County actions, Tessitore moved to withdraw his Broward County complaint and rushed to this Court. He asserts here the same state law claims on behalf of the same class he lost the bid to lead in state court, and tacks on make-weight federal claims predicated on the same substantive allegations. To add insult to injury, Tessitore then made an unsuccessful attempt to move, by order to show cause, for duplicative expedited discovery in this Court even though expedited discovery was already progressing in the consolidated Broward County proceeding he had just abandoned.

Neither Defendants nor the Court should be forced to expend valuable time and resources responding to such lawyer-driven maneuvering in an essentially duplicative lawsuit. *First*, Plaintiffs' claims are subject to the automatic stay of all proceedings and discovery mandated by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(3)(B), pending resolution of the motions to dismiss that Defendants intend to file. *Second*, in addition to this statutorily mandated stay, this Court has inherent authority to stay the action in the interest of justice and judicial economy. Applying the well-established *Colorado River* analysis, the

Consolidated Actions clearly parallel the state actions and present the requisite circumstances warranting temporary deference to state court adjudication.  Thus, through the automatic stay and the exercise of its inherent authority, this Court should put a stop to Plaintiffs' brazen attempt to game the court system.

## FACTUAL BACKGROUND

Defendant China Fire is a Florida corporation primarily engaged in the design, manufacture and sale of fire safety products and services.  (*See* Affidavit of Jorge D. Guttman, dated August 3, 2011 ("Guttman Aff.") Ex. 1, Preliminary Proxy filed June 10, 2011 (the "Preliminary Proxy") at 18).  The Company is headquartered in Beijing and conducts substantially all of its operations in China.  (*See* Guttman Aff. Ex. 2, at 4, 21.)  Defendants Weigang Li, Brian Lin, Weishe Zhang, Guoyou Zhang, Yinqing Li, Xianghua Li, and Albert McLelland (collectively, the "Individual Defendants") are the Company's directors.  Defendant Bain Capital, a Delaware limited liability company based in Boston, is "a private investment firm with approximately $65 billion in assets under management."  (Fuller Compl. ¶ 24.)

On March 7, 2011, the Company issued a press release announcing that it had received an offer from a private equity fund to acquire all shares of its outstanding stock and that the proposed transaction might be structured such that Company management could acquire shares of the post-acquisition company.  (*See* Guttman Aff. Ex. 3.)  On April 1, 2011, the first of nine currently pending putative class action suits brought on behalf of Company shareholders, *Brown v. China Fire & Security Group, Inc. et al.*, Case. No. 11-7745 (09), was filed in the Circuit Court for the Seventeenth Judicial Circuit in and for Broward County, Florida.  (Guttman Aff. Ex. 4.)  The *Brown* complaint alleges that the Company and the Individual Defendants breached their fiduciary duties by failing to disclose material facts surrounding the acquisition proposal and seeks, among other things, to enjoin any resulting transaction.  (*See Id.* at ¶¶ 40-48.)  On

May 11, 2011, another putative class action, *Thomasson v. China Fire & Security Group, Inc. et al.*, Case. No. 11-10923 (07), making the same allegations against the Company and Individual Defendants and seeking the same relief, was filed in Broward County.  (*See* Guttman Aff. Ex. 5.)

On May 20, 2011, China Fire announced that it had entered into an agreement with Defendant Amber Parent Limited ("Parent"), an affiliate of Defendants Bain Capital and Amber Mergerco., Inc. ("Merger Sub") to, subject to the approval of a majority of disinterested shareholders, exchange all outstanding shares of Company stock for $9.00 per share, a 44% premium over the closing price on March 4, 2011 and a 38% premium over the Company's 90-day trading volume weighted average price calculated as of May 19, 2011 (the "Proposed Transaction").  (*See* Guttman Aff. Ex. 6.)  The agreement is subject to an additional 55-day "go shop" period during which the Company can solicit superior offers, and contains a customary "fiduciary out" provision whereby the Board can withdraw its support for the agreement should it determine that its fiduciary duties so require.  (Preliminary Proxy at 25-27.)

Seven additional putative class actions, including two filed by Tessitore in separate state courts, followed the Company's May 20, 2011 announcement.  On May 27, 2011, Tessitore initially sought relief along with plaintiff Bahram Kashef as a named plaintiff in *Kashef and Tessitore, et al. v. China Fire & Security Group, Inc.*, Case No. 50 2011CA 007884, in the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, making the same substantive allegations, seeking the same relief, and asserting the same breach of fiduciary duty and aiding and abetting claims as those he asserts here.  (*See* Guttman Aff. Ex. 7.) On May 31, 2011 and June 1, 2011, two more practically identical suits, *Ernst v. China Fire & Security Group, Inc. et al.*, Case. No. 11-12317 (07), and *Roche v. Lin, et. al.*, Case No. 11-12471 07, were filed in Broward County.  (*See* Guttman Aff. Exs. 8-9.)

With numerous actions pending in Broward County, Tessitore determined that he would no longer pursue his lawsuit in Palm Beach County.  Thus, on June 2, 2011, Tessitore filed another class action lawsuit suit in which he was the sole named plaintiff challenging the Proposed Transaction, this time in Broward County.  (*See* Guttman Aff. Ex. 10.)  More than a week later, on June 10, 2011, Tessitore withdrew the action he had initiated in Palm Beach County.  (*See* Guttman Aff. Ex. 11.)  But Tessitore was not the last one to the state courthouse. On June 8, 2011, a seventh, virtually indistinguishable action, *Hersh v. Amber Mergerco Inc., et al.*, Case No. 11-13037 (02), was filed in Broward County.  (*See* Guttman Aff. Ex. 12.)

On June 10, 2011, the Company filed a Preliminary Proxy describing the Proposed Transaction with the Securities and Exchange Commission.  (*See* Preliminary Proxy.)  Shortly thereafter, plaintiffs in four of the state actions, including Tessitore, filed amended complaints alleging, like the Consolidated Actions, that the Preliminary Proxy was materially false and misleading.  (*See* Fuller Compl. ¶¶ 9, 52-56; *see also* Guttman Aff. Exs. 13 (Ernst Am. ¶¶ 17, 61-63), 14 (Tessitore Am. Compl. ¶¶ 4, 62-75), 15 (Roche Am. Compl. ¶¶ 7, 47-51), 16 (Kashef Am. Compl. ¶¶ 11, 67-68)).

On June 22, 2011, almost three months after the *Brown* complaint was filed and served, Plaintiff Fuller filed the first of the Consolidated Actions -- making the same fundamental allegations as all seven previously-filed state actions, but recast as two federal and two state-law claims.  The federal claims, which Fuller alleges only on his own behalf, assert violations of Sections 14(a) and 20(a) of the Securities Exchange Act (the "Exchange Act") due to alleged omissions in the Preliminary Proxy.  (Fuller Compl. ¶¶ 57-71.)  The remaining claims, which Fuller purports to assert on behalf of all Company shareholders, precisely duplicate the fiduciary duty and aiding and abetting claims asserted in the state court actions.  (Fuller Compl. ¶¶ 72-84.)

Meanwhile, Tessitore actively litigated his case in Broward County.  On June 17, 2011, he filed an amended complaint.  (*See* Guttman Aff. Ex. 14.)  Then, on June 21, 2011, he filed the first of two motions seeking, among other things, consolidation of the Broward County actions, his appointment as lead plaintiff, and his counsel's appointment as lead plaintiff's counsel.  (*See* Guttman Aff. Ex. 17.)

On June 30, 2011, after it became clear that the Broward actions were being transferred to the Complex Litigation Unit of the Circuit Court for the Seventeenth Judicial Circuit in and for Broward County ("Complex Litigation Unit"), Tessitore filed yet another motion seeking to consolidate all similar actions there and seeking expedited discovery in that forum.  (*See* Guttman Aff. Ex. 18.)

Tessitore urged the Broward County Court to consolidate these lawsuits in that forum and touted the benefits that consolidation in Broward County would bring to the class as a whole.  He argued that "it is virtually assured that consolidation will accelerate the trial process, avoid duplicative costs and trials and unnecessary expenses, and eliminate the possibility of inconsistent verdicts" and, thus, there is "no disagreement between the Tessitore plaintiffs, the Ernst plaintiffs, and the plaintiff in *Roche* that all six pending class actions, and any future class actions involving substantially similar facts and legal issues, should be consolidated within Division 07" of Broward County.  (Guttman Aff. Ex. 18, at 10-11.)

At a hearing on July 11, 2011, Judge Streitfeld, of the Complex Litigation Unit of the Broward Circuit Court, agreed with Tessitore and other Plaintiffs and consolidated the Broward County actions under *In re China Fire & Security Group, Inc. Shareholder Litigation*, No. 11-7745 (07).  But the Court denied Tessitore's motion for appointment as lead plaintiff and lead counsel, and appointed another lead plaintiff and lead counsel to prosecute the consolidated

action on behalf of the putative class.  (*See* Guttman Aff. Ex. 19.)  Judge Streitfeld set a preliminary injunction hearing for September 6, 2011, and ordered the parties to meet and confer about discovery and a briefing schedule.  (*See* Guttman Aff. ¶ 22.)  Four days later, the parties submitted to Judge Streitfeld a negotiated expedited discovery schedule, which was entered by the court on July 15, 2011.  (*See* Guttman Aff. ¶ 22; Ex. 20.)

Tessitore refused to abide by the Court's July 15 Order and, instead, took steps to continue his and his counsel's efforts to seize control of the litigation relating to the Proposed Transaction.  First, he filed notice in Broward County voluntarily dismissing the action he had filed and had been litigating there.  (*See* Guttman Aff. Ex. 21.)  Second, on July 15, 2011, he filed the instant putative class action, asserting on behalf of Company shareholders not only the same fiduciary duty and aiding and abetting claims already being litigated in the state court actions, (Tessitore Compl. ¶¶ 82-96), but also the same alleged violations of Sections 14(a) and 20(a) of the Securities Exchange Act (the "Exchange Act") based on essentially the same alleged omissions in the Preliminary Proxy already at issue in the *Fuller* action (Tessitore Compl. ¶¶ 74-81).  Also on July 15, 2011, Defendants filed a motion seeking to stay the *Fuller* action in this Court.

On July 22, 2011, Tessitore filed an Order to Show Cause for Expedited Discovery and supporting Memorandum of Law, seeking, among other things, to access discovery in the same Broward County action from which he had just withdrawn (*See* Declaration of Scott J. Farrell, Ex. D, Request No. 23).  On August 1, 2011, Defendants filed their opposition.  On August 2, 2011, this Court struck Defendants' opposition, finding that Tessitore's July 22, 2011 filing did not constitute a pending motion.  (*See* Tessitore Docket No. 22.)  The Court stated that Defendants could separately move to stay the *Tessitore* action.  (*See id.*)  Also on August 2,

2011, the Court granted Defendants' motion to consolidate the *Fuller* and *Tessitore* actions.  (*See* Tessitore Docket No. 23.)

In the meantime, discovery has been proceeding expeditiously in the Broward County action, in which Defendants China Fire and Albert McLelland have produced more than four thousand pages of documents.  (Guttman Aff. ¶ 24.)  Depositions are scheduled to begin August 5, 2011 and are on track to be completed by August 15, 2011.  (Guttman Aff ¶ 24.)  A preliminary injunction hearing is scheduled to occur on September 6, 2011.  (Guttman Aff. ¶ 22; Ex. 20.)

## ARGUMENT

Two grounds independently justify staying this litigation.  Under the PSLRA, the Court should stay the Consolidated Actions during the pendency of motions to dismiss that Defendants intend to file.  Under its *Colorado River* authority, the Court should stay both actions until the state actions are resolved.  Because it is not certain at this point which of these two stays would be extinguished last, Defendants request that the Court order both stays.

## I.    The PSLRA's Automatic Stay Applies Because Plaintiffs Assert Claims Under the Exchange Act

Both Tessitore and Fuller seek refuge in the federal forum for their duplicative lawsuits, but this strategy comes at a price.  The PSLRA automatically stays suits alleging Exchange Act violations where, as here, defendants have indicated their intent to file for dismissal of the action.  *See* 15 U.S.C. § 78u-4(b)(3)(B) ("In *any* private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss. . . .") (emphasis added).  Congress enacted the PSLRA to address certain abuses in the securities lawsuits, including "nuisance filings . . . vexatious discovery requests, and 'manipulation by class action lawyers of the clients whom they purportedly represent. . . .'"  *Merrill Lynch Pierce,*

*Fenner & Smith v. Dabit*, 547 U.S. 71, 81 (2006) (quoting H.R. Conf. Rep. No. 104-369, p.31 (1995)). These requirements were enacted to preclude precisely the sort of vexatious litigation tactics both Plaintiffs have employed here.

Congress enacted the discovery stay "to prevent costly extensive discovery . . . until a court could determine whether a filed suit had merit. . . ." *Newby v. Enron Corp.*, 338 F. 3d 467, 471 (5th Cir. 2003) (internal quotation and citation omitted). Therefore, stay is appropriate under the PSLRA even before a motion to dismiss has been filed, so long as such a motion is likely. *See In re DPL Inc. Sec. Litig.*, 247 F. Supp. 2d 946, 947 n.4 (S.D. Ohio 2003) ("Courts have held that the stay provision applies not only when a defendant has moved to dismiss a federal securities law claim, but also when it is anticipated that such a motion will be filed in the future."); *In re Carnegie Int'l Corp. Sec. Litig.*, 107 F. Supp. 2d 676, 683 (D. Md. 2000) (finding that discovery stay applied when defendant "probably intends to file a Motion to Dismiss" to ensure that the court assessed the sufficiency of the complaint); *Fisher v. Kansas*, No. 06-cv-1187, 2006 WL 2239038, at *2 (E.D.N.Y. Aug. 4, 2006) ("Courts have held [that] the automatic stay provision of the [PSLRA] is triggered by the mere indication by defense of its intention to file a motion to dismiss." (internal quotation and citation omitted)). Here, because Plaintiffs allege Exchange Act claims and Defendants intend to seek dismissal, the Consolidated Actions are subject to the PSLRA's automatic stay.[1]

---

[1]     The PLSRA stays *all* securities law claims, and Fuller's apparent attempt to avoid the stay by alleging securities law violations individually rather than on behalf of a putative class is thus unavailing. *See Band v. Ginn Companies LLC*, No. 09-cv-792-J-25TEM, 2011 WL 807396, at *3 (M.D. Fla. Mar. 2, 2011) (finding plaintiff's argument that the PSLRA only applies to securities class actions "wholly without merit" and applying the discovery stay to individual securities law claims). Federal courts have uniformly found that the discovery stay applies to individual, non-class, securities law causes of action. *See, e.g.*, *Hilliard v. Black*, 125 F. Supp. 2d 1071, 1084 (N.D. Fla. 2000) (finding discovery stay applied to individual securities fraud action and staying Rule 26 Initial Disclosures); *Band*, 2011 WL 807396, at*3 (finding

Nor can Plaintiffs bypass the automatic discovery stay by including pendant state law class action claims.  Courts have roundly rejected such gamesmanship.  *See SG Cowen Sec. Corp. v. U.S .Dist. Ct. for the N. Dist. of Cal.,* 189 F. 3d 909, 913 n.1 (9th Cir. 1999) ("Congress' attempt to address [concerns of discovery abuse] would be rendered meaningless if securities plaintiffs could circumvent the stay simply by asserting pendent state law claims in federal court in conjunction with their federal law claims.") (internal quotation omitted); *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1180 (C.D. Cal. 2008) (finding that the discovery stay included a stay of the plaintiffs' state law derivative claims); *see also In re Trump Hotel S'holder Derivative Litig.*, No. 96 Civ. 7820, 1997 WL 442135, at *2 (S.D.N.Y. Aug. 5, 1997) (staying pendant state law claims because "[h]aving chosen to invoke Section 14 of the Exchange Act, plaintiffs are necessarily subject to the PSLRA").  This Court should do the same.

Moreover, as Defendants expect to argue in their forthcoming motion to dismiss, this Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims, which plainly duplicate the claims asserted in no fewer than seven earlier-filed state court actions.  Plaintiffs' federal claims are the "federal tail" wagging "what is in substance a state dog" that is properly addressed by state courts in the first instance.  *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 311 (3d Cir. 2003); *Santiago v. Wm. G. Roe & Sons*, No. 8:07-CV-1786, 2008 WL 2944921, at *1 (M.D. Fla. July 29, 2008) (declining supplemental jurisdiction *sua sponte* where the "state law claims are the real body of this case, to which the [federal] claim[s] [are] only an appendage."); *see also* 28 U.S.C. § 1367(c) ("district courts may decline to exercise

---

PSLRA stays both class and individual securities law claims).  The reason is simple and derives from the plain language of the statute.  Section 21D(a) of the Exchange Act applies to "each private action arising under this title that is brought as a plaintiff class action," 15 U.S.C. § 78u-4(a)(1), while Section 21D(b) — including the stay of discovery under Section 21D(b)(3)(B) — applies to "any private action arising under this title in which the plaintiff alleges" material falsehoods or omissions.  15 U.S.C. § 78u-4(a)(1).

supplemental jurisdiction . . . if (1) the claim raises a novel or complex issue of State law [or] (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction. . . .").  That state law claims predominate is amply demonstrated by Plaintiffs' wholesale reiteration of claims already asserted in state court.  Moreover, as Florida courts have rarely addressed the scope of the fiduciary duty owed by directors of Florida corporations to their shareholders in a merger context, Plaintiffs' duplicative state law claims are uniquely suited to state court adjudication.[2]

In short, the Consolidated Actions are nothing more than a lawyer-driven effort to force Defendants to litigate substantively identical actions in separate fora.  This is precisely the type of vexatious behavior the PSLRA is intended to prevent, and as such, should not be countenanced by this Court.

## II.   In Addition to the Automatic Stay under the PSLRA, the Court Should Stay Proceedings Pursuant to Its Inherent Authority

In addition to the PSLRA's automatic stay during the pendency of Defendants' forthcoming motions to dismiss, the Court should also exercise its inherent power to stay this

---

[2]   Further, even if the Court neither applies the PSLRA to Plaintiffs' state law claims nor dismisses them *sua sponte*, it should stay them pursuant to the *Colorado River* doctrine (discussed in detail in Part B below).  In this respect, this case is no different from the recently-decided *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640, 2011 WL 835811, at *6-9 (N.D. Cal. Mar. 4, 2011), in which a federal plaintiff filed individual claims under sections 14(a) and 20(a) of the Exchange Act along with state law class action claims, *id.* at *2.  One month prior, five separate shareholder class action suits had been filed in Delaware state court seeking the same relief under state law against substantially the same defendants.  *Id.* at *2, *8. Defendants moved to stay, but did not raise any argument under the PSLRA.  Because the federal plaintiff's state law class claims were duplicative of those actions, the state court actions had been consolidated and a lead plaintiff assigned, and the state court provided adequate protection of the federal plaintiff's rights as a shareholder, the Court ordered the federal plaintiff's state law class action claims stayed pursuant to *Colorado River*.  *Id.* at * 8-9.  The Court subsequently stayed the plaintiff's federal claims pursuant to the PSLRA.  *Krieger v. Atheros Communications, Inc.*, No. 11-CV-00640, at *3 (N.D. Cal. Apr. 22, 2011).  This case is nearly identical, and should meet a similar end.

action pending resolution of the state court actions.  The Court's inherent power to stay proceedings in the interests of justice and judicial economy is well-established.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Rambaran v. Park Square Enters., Inc.*, No. 6:08-cv-247-Orl-19GJK, 2008 WL 4371356, at * 2 (M.D. Fla. Sept. 22, 2008) ("Trial courts are afforded broad discretion in determining whether to stay or dismiss litigation in order to avoid duplicating a proceeding already pending in another federal court") (internal quotation omitted); *Shell Oil Co. v. Altina Assocs., Inc.*, 866 F. Supp. 536, 540 (M.D. Fla. 1994) ("[A] court may exercise its inherent discretionary authority to stay cases to control its docket and in the interests of justice and efficiency.")  The Eleventh Circuit has stated that where, as here, there is parallel state litigation, the Court is to be guided by the abstention factors outlined in the Supreme Court's decision in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) in determining whether to stay proceedings.  *See Ambrosia Coal & Constr. Co. v. Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004) (the "*Colorado River* analysis is applicable as a threshold matter when federal and state proceedings involve substantially the same parties and substantially the same issues").  Under *Colorado River*, a stay is warranted where (1) the federal and state actions are parallel and (2) "exceptional circumstances" favor delay.  *See id.* at 1328 ("federal courts can abstain to avoid duplicative litigation with state courts only in 'exceptional' circumstances").  Here, both conditions are met.

The federal and state actions are plainly parallel.  In both instances, plaintiffs purport to represent the same class (China Fire shareholders), the actions are predicated on the same underlying facts (negotiation and announcement of the Proposed Transaction), make

substantially similar claims (fiduciary duty and disclosure claims and attendant aiding and abetting claims), and seek the same relief (injunction, accounting, and incidental damages) against all named parties (the Company, the Individual Defendants, Bain Capital and its affiliates).  (*See* Guttman Aff. Exs. 4-5, 7-16); *see also Lisa, S.A. v. Mayorga*, 232 F. Supp. 2d 1325, 1327 (S.D. Fla. 2002) ("Exact parallelism between the two actions, however, is not required; merely the existence of substantially the same parties litigating substantially the same issues in different fora must be present."); *Ambrosia*, 368 F. 3d 1320, at 1330 (same).  Even the alleged omissions in the Preliminary Proxy, which form the basis of Plaintiffs' federal claims, overlap with those asserted (including by Tessitore) in the state actions.  These include the charge that the Preliminary Proxy does not adequately detail:

- Barclays' October 2010 selection of potential buyers (Tessitore Compl. ¶67(e); Fuller Compl. ¶54(a); Tessitore Am. Compl. ¶72; Roche Am. Compl. ¶49(h), Kashef Am. Compl. ¶67(v));

- The Board's discussions with a prospective multinational buyer in April 2010 (Fuller Compl. ¶54(b); Roche Am. Compl. ¶48(a));

- The basis for entering into exclusivity agreements with Bain Capital in 2011 (Tessitore Compl. ¶67(h); Fuller Compl. ¶54(c-d); Tessitore Am. Compl. ¶69(h); Roche Am. Compl. ¶49(k), (m));

- The rationale for accepting the $9.00/share price contemplated by the Proposed Transaction (Fuller Compl. ¶54(e); Roche Am. Compl. ¶48(j));

- Potential conflicts between alleged insiders and public shareholders (Tessitore Compl. ¶62; Fuller Compl. ¶54(g); Roche Am. Compl. ¶49(p-q)); and

- How the Company chose its financial advisor (Tessitore Compl. ¶¶ 63-64; Fuller Compl. ¶ 54(h); Ernst Am. Compl. ¶62(a); Tessitore Am. Compl. ¶65; Roche Am. Compl. ¶49(a-c), (f); Kashef Am. Compl. ¶¶67(xviii-xix)).

The remaining substantive allegations in both the federal and state actions are virtually identical, namely that:

- The merger consideration is inadequate (Tessitore Compl. ¶51; Fuller Compl. ¶¶5, 39; Ernst Am. Compl. ¶¶ 9, 60; Tessitore Am. Compl. ¶53; Roche Am. Compl. ¶¶3, 33; Kashef Am. Compl. ¶¶1, 69-71, 75-76);

- There are "impermissible" deal-protection devices (Tessitore Compl. ¶¶54-59; Fuller Compl. ¶7; Ernst Am. Compl. ¶¶13-14, 58-59; Tessitore Am. Compl. ¶¶58-61; Roche Am. Compl. ¶¶41-46; Kashef Am. Compl. ¶¶9-10, 72-74));

- Certain Company insiders will benefit at the expense of shareholders (Tessitore Compl. ¶¶48-50; Fuller Compl. ¶6; Ernst Am. Compl. ¶9; Tessitore Am. Compl. ¶¶3, 51-52; Roche Am. Compl. ¶4, 36-40; Kashef Am. Compl. ¶¶5-6, 63-66)); and

- The Company's special committee process was flawed (Fuller Compl. ¶ 44; Ernst Compl. ¶ 5)).

That the federal and state actions are parallel, and the first step of the *Colorado River* analysis is satisfied, is thus beyond dispute.

This case also presents exceptional circumstances that warrant a stay.  Determination of whether exceptional circumstances exist requires a balancing of six non-exclusive factors: (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights.  *See Ambrosia*, 368 F.3d at 1331.  Additionally, the Court should consider whether the federal suit constitutes vexatious or reactive litigation.  *See Rambaran*, 2008 WL 4371356, at *3.  The Supreme Court has clarified that this balancing test "is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983).  While the decision to stay proceedings should not be taken lightly, "[o]ne factor alone can be the sole motivating reason for the abstention."  *Moorer v. Demopolis Waterworks & Sewer Bd.*,

374 F.3d 994, 997 (11th Cir. 2004); *Leaderstat, LLC v. Abisellan*, No. 8:06-cv-1337, 2007

WL 5433486, at *2 (M.D. Fla. Jan. 24, 2007) (same).

Here, as detailed below, most factors support staying proceedings, while the remaining

few are either neutral or inapposite.

**A.      The First Two Factors Are Inapplicable**

The first *Colorado River* factor, whether one of the courts has assumed jurisdiction over

property, is inapplicable as this is not a proceeding *in rem.  See Lee Mem. Health Sys. v. Med.*

*Sav. Ins. Co.*, No. 2:04-cv-445, 2006 WL 3231388, at *1 (M.D. Fla, Nov. 7, 2006) (holding that

"The first factor is inapplicable because neither actions are proceedings *in rem.*") (internal

citation omitted).  The second factor regarding relative convenience of the fora is neutral because

this Court and the Florida state court proceedings in Broward County and Palm Beach County

are located in close proximity to each other.  *See Rambaran*, 2008 WL 4371356, at *4 ("When

the federal and state courts are located in the same geographical area, courts routinely deem this

factor to be neutral.")

**B.      The Remaining Factors Favor Stay**

The third factor – avoiding piecemeal litigation – is alone sufficient to warrant a stay.  As

detailed above, the state actions involve nearly identical claims asserted against nearly identical

parties based on the exact same underlying facts, and parallel adjudication threatens to waste the

valuable time and resources of all involved – including the Court.  *See Sides v. Simmons*,

No. 07-80347-CIV, 2007 WL 3344405, at *3 (S.D. Fla. Nov. 7, 2007) ("The danger of

piecemeal litigation is great as the issues being litigated in state court mirror those issues being

litigated in federal court. . . . To allow litigation in this Court, while the same litigation is

pending in state court, will require twice the resources:  two discoveries, two trials and possibly

two conflicting decisions based on the same evidence"); *Leaderstat,* 2007 WL 5433486, at *3

15

("Because the plaintiff seeks to force the defendant to defend two identical lawsuits in two different forums at unnecessary inconvenience and expense, a distinct danger of oppressively duplicative, piecemeal litigation exists.  The third factor weighs strongly in favor of a stay"); *Shallal v. Elson*, No. 98-8739-CIV, 1999 WL 33957906, at *4 (S.D. Fla. Apr. 12, 1999) ("Piecemeal litigation results when the federal and state courts are adjudicating the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results.").  Further, because Plaintiffs' disclosure, breach of fiduciary duty, and aiding and abetting claims are already squarely before the state court, there is obvious potential for inconsistent rulings.  *See Bosdorf v. Beach*, 79 F. Supp. 2d 1337, 1344 (S.D. Fla. 1999) (granting stay after finding strong possibility that adjudication would "duplicate the efforts of the state court, potentially reaching a different conclusion on identical facts.")  This danger "looms particularly ominously in the class action context, where the potential for inefficiency is acute." *Romine v. Compuserve Corp.*, 160 F.3d 337, 341 (6th Cir. 1998).  Moreover, adjudication of the state court actions would likely preclude most, if not all, of Plaintiffs' claims.  *See Allied Mach. Serv., Inc. v. Caterpillar Inc.*, 841 F. Supp. 406, 408 (S.D. Fla. 1993) (observing that stay under such circumstances would avoid "the kind of wasteful, duplicative adjudication the abstention doctrine was created to prevent.").

The order in which each forum obtained jurisdiction also favors staying this action.  This factor is designed to protect "the neutrality of the federal system . . . consistent with long-standing judicial notions of issue and claim preclusion" by disfavoring a race to judgment in parallel actions.  *Sides*, 2007 WL 3344405, at *4.  Here, Fuller filed suit after *all seven* state actions were filed, and nearly three months after the first suit.  Tessitore only filed suit in federal court after filing in two separate state courts and only after a failed attempt to lead the parallel

consolidated state class action.  Moreover, while there have been virtually no substantive filings in the instant case, the state court actions have steadily progressed towards resolution:  the six Broward County actions have already been consolidated, lead plaintiff and lead counsel have been appointed, and expedited discovery is well underway, as defendants have produced over 4,000 pages of documents and depositions are scheduled to begin this week.  (Guttman Aff. ¶ 24; Ex. 19); *cf. Rambaran*, 2008 WL 4371356, at *7 (applying stay where state court action was filed one month earlier and "the proceedings have also progressed significantly farther in the state case than in the instant case."); *Leaderstat*, 2007 WL 5433486, at *3 (the fourth factor favored stay where state court action was filed three months earlier).

The fifth factor -- whether state or federal law applies to the merits -- similarly favors staying the instant action.  Plaintiffs' class-wide allegations predicated on state law govern the lion's share of this action.  Furthermore, as shown above, the federal claims are premised on the exact same alleged omissions already at issue in the state court proceedings.  As Florida courts have only rarely faced disclosure and fiduciary duty claims regarding Florida corporations in the context of a merger transaction, these claims present important issues of state law that should be addressed by state courts in the first instance.  *See Venezia Resort, LLC v. Favret*, No. 3:07CV74/MCR/EMT, 2007 WL 1364342, at *7 (N.D. Fla. May 8, 2007) (explaining that while "only in rare circumstances will the presence of a state law issue weigh in favor of a stay. . . when an action involves complex questions of state law which would best be resolved by the state court, the requisite 'rare circumstances' exist.").

It is also likely that the same substantive law will be applied to both the federal and state disclosure claims.  *See AvMed Inc. v. Sheridan Healthcorp, Inc*., No. 09-23851-CIV, 2010 WL 3008811, at *7 (S.D. Fla. July 28, 2010) (issuing stay where federal court had exclusive

jurisdiction over plaintiff's antitrust claim but "the state law is substantially similar to and provides for the same relief as the federal law"); *Rivera v. Healthcare Services Grp.,* No. 8:10-cv-1019, 2010 WL 2553606 at *3-4 (M.D. Fla. June 23, 2010) (stay warranted where same analytical framework applied to both state and federal claims).  Florida courts routinely turn to Delaware for guidance when interpreting Florida's corporate law.  *See Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1459 n.22 (11th Cir. 1989) ("We rely with confidence upon Delaware law to construe Florida corporate law"); *Boettcher v. IMC Mort. Co.*, 871 So. 2d 1047, 1052 n.5 (Fla. 2d DCA 2004) (observing that Florida courts routinely consult Delaware case law when construing Florida statutory law governing corporations).  Delaware courts, in turn, apply the same standard of materiality used by federal courts when adjudicating disclosure claims.  *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 439 (1976) (in Section 14(a) claims, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."); *In re Cogent, Inc. S'holder Litig.*, 7 A.3d 487, 509 ( Del. Ch. 2010) ("The objective definition of materiality employed by Delaware courts is adopted from the United States Supreme Court's decision in *TSC Industries v. Northway, Inc.*").  Thus, not only do state law claims predominate in this action, even the disclosure claims providing Plaintiffs' sole basis for federal jurisdiction will be addressed using the same standards applicable in state court.

The sixth factor also favors stay because Plaintiffs' allegations and requested relief are substantively no different than those at issue in the state court actions, and the state court is expeditiously adjudicating them.  *See Venezia*, 2007 WL 1364342, at *7 ("The final factor, the adequacy of the state forum, operates against the surrender of federal jurisdiction only where the state forum may not be adequate to adjudicate the claims"); *Krieger v. Atheros Commcn's Inc.*,

No. 11-CV-00640, 2011 WL 835811, at *8 (N.D. Cal. Mar. 4, 2011) (sixth factor favors stay where "[t]here is no relief sought in the federal action that cannot be obtained, based on similar allegations and legal theories, in the [state] action.")  Moreover, Plaintiffs are members of the putative class in the state actions, and as such their "rights and interests will be fully protected in those proceedings." *Krieger*, 2011 WL 835811 at *8.  The consolidation of the six Broward County actions and the progress of expedited discovery in that consolidated proceeding demonstrate that the Florida state court is attentively and efficiently adjudicating this matter.

Finally, stay is warranted because the Consolidated Actions constitute vexatious litigation.  While Fuller's forum shopping is obvious, Tessitore's is brazen.  Fuller was late to the table in state court.  Tessitore, however, seeks to reverse his losses in state court.  Tessitore filed this action not only after he filed, and voluntarily withdrew, *two* substantially similar actions in state court, but also after he contended for and lost appointment as lead plaintiff of the very same class of shareholders he purports to "adequately" represent here.[3]  (Tessitore Compl. ¶ 31.)  This sequence of filings amply "indicate[s] that the plaintiff's federal suit [is] 'vexatious and reactive.'"  *Lops v. Lops*, 140 F.3d 927, 964 (11th Cir. 1998) (citation omitted) (finding that the "reactive nature" of the plaintiff's suit is "an important consideration in favor of deferring" to the state court); *Bosdorf*, 79 F. Supp. 2d at 1346 (noting that "refiling the same suit in federal court

---

[3]     The state court appointed another lead plaintiff to represent the same class of shareholders Tessitore claims to adequately represent here.  A determination of Tessitore's adequacy as named plaintiff, pursuant to Fed. R. Civ. P. 23(a), will require the parties to re-litigate this issue and thus effectively constitute a forbidden appeal of the state court's prior ruling.  *See Exxon Mobile Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005) (holding that the *Rooker-Feldman* doctrine bars federal court review of state court judgments when federal "cases are brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of these judgments.").  Even if the *Rooker-Feldman* doctrine does not bar this court from re-litigating the appointment of a class representative of the same shareholder class, the appointment of Tessitore as class representative is also barred by *res judicata* to the extent he asserts state law claims.

after adverse decision in state court suggests reactive and vexatious nature of [the] second suit"

(citation omitted)).  On these facts, "it is difficult to conceive of the instant case as anything

other than forum shopping and 'reactive litigation.'"  *Bosdorf*, 79 F. Supp. 2d at 1346.[4]

In substance, this suit is nothing more than an attempt to repackage identical facts and

issues already being adjudicated in state court.  As evidenced by Judge Streitfeld's consolidation

order, Plaintiffs' interests are already adequately represented as members of the putative class in

the Broward County action being prosecuted by diligent counsel.  (*See* Guttman Aff. Ex. 19); s*ee

also Krieger*, 2011 WL 835811, *8 (finding that where, as here, there was a state court class

action based on "extremely similar" facts and legal theories, and seeking the same relief, a

federal plaintiff was adequately represented as a member of the class which argued for a stay of

the federal proceedings).  Applying *Colorado River*, this Court should thus stay the Consolidated

Actions, and Plaintiffs' gamesmanship.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Consolidated Actions should be stayed during the

pendency of motions to dismiss that Defendants intend to file in this Court and should be stayed

pending resolution of *In re China Fire & Security Group, Inc. Shareholder Litigation*, No. 11-

7745 (07) in the Broward County Circuit Court.

---

[4]      That Tessitore's lawsuit is "reactive litigation" is particularly clear because his tactical forum shopping is without pretext or modesty.  On June 30, 2011, Tessitore urged the Broward County Court to take control of "all six pending class actions, and any future class actions involving substantially similar facts and legal issues" precisely so that it would to "accelerate the trial process, avoid duplicative costs and trials and unnecessary expenses, and eliminate the possibility of inconsistent verdicts."  (Tessitore Guttman Aff. Ex. 18, at 10-11.)  But within a matter of days, after he and his counsel did not get their way in the appointment of lead plaintiff and lead counsel, Tessitore filed a lawsuit creating the very inefficiencies he had urged the Broward County Court to take action to prevent just days earlier.  This is precisely the type of reactive litigation the Supreme Court seeks to address by allowing federal courts to use their inherent authority to stay their hand.  *See Moses H. Cone,* 460 U.S. 1, at 17 n.20.

Respectfully submitted,

OF COUNSEL:
Stephen D. Hibbard
SHEARMAN & STERLING LLP
Four Embarcadero Center
San Francisco, CA 94111
(415) 616-1174

Paula H. Anderson
W. Owen Russell
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
(212) 848-4000
*Attorneys for Defendants China Fire & Security Group, Inc. and Albert McLelland*

                    /s/ Jorge Guttman
WILLIAM K. HILL, P.A.
Florida Bar No. 747180
E-mail:  whill@bilzin.com
JORGE D. GUTTMAN, ESQ.
Florida Bar No. 015319
E-mail:  jguttman@bilzin.com
Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, 23rd Floor
Miami, FL  33131-2336
Telephone:  (305) 374-7580
*Attorneys for Defendants China Fire & Security Group, Inc. and Albert McLelland*

                    /s/ Joseph Innano, Jr.
Joseph Ianno, Jr.
Florida Bar No. 655351
E-mail: jianno@carltonfields.com
Carlton Fields
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, Florida  33401-6350
Tel: Tel: (561) 650-8008
Fax: (561) 659-7638
*Attorney for Defendants Amber Parent Limited, Amber Mergerco, Inc., and Bain Capital Partners, LLC*

## CERTIFICATE OF CONFERENCE PURSUANT TO S.D. FLA. L.R. 7.1(A)(3)

I HEREBY CERTIFY that I have conferred with counsel for Plaintiffs regarding the substance and relief sought by this Motion in a good faith attempt at resolving the issues raised herein, but was unable to do so.

By:  /s/ Jorge Guttman
        Jorge D. Guttman

CASE NO. 11-61400-CIV (WPD)

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 3, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: *<u>/s/ Jorge Guttman</u>*
           Jorge D. Guttman

22

CASE NO. 11-61400-CIV (WPD)

**SERVICE LIST**

**FARMER, JAFFE, WEISSING, et al.**
*Counsel for Plaintiff James P. Tessitore*
Steven R. Jaffe, Esq. (FBN 390770)
Mark S. Fistos, Esq. (FBN 909191)
425 N. Andrews Ave., Suite 2
Fort Lauderdale, Florida 33301
Telephone 954-524-2820
Facsimile 954-524-2822
steve@pathtojustice.com
mark@pathtojustice.com

**RIGRODSKY & LONG, P.A.**
*Of Counsel for Plaintiff James P. Tessitore*
Timothy J. MacFall
Scott J. Farrell
585 Stewart Avenue, Suite 304
Garden City, NY 11530
Tel.: (516) 683-3516
Fax: (302) 654-7530
tjm@rigrodskylong.com

**CARLTON FIELDS**
*Attorney for Defendants Amber*
*Parent Limited, Amber Mergerco, Inc.,*
*and Bain Capital Partners, LLC*
Joseph Ianno, Jr.
Florida Bar No. 655351
E-mail: jianno@carltonfields.com
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, Florida  33401-6350
Tel: (561) 650-8008
Fax: (561) 659-7638

**RIGRODSKY & LONG, P.A.**
*Of Counsel for Plaintiff James P. Tessitore*
Seth D. Rigrodsky
Brian D. Long
Gina M. Serra
919 N. Market Street, Suite 980
Wilmington, DE 19801
Tel.: (302) 295-5310
Fax: (302) 654-7530

**FARUQI& FARUQI, LLP**
*Attorneys for Plaintiff*
*Russell Fuller*
3595 Sheridan Street
Suite 206
Hollywood, FL 33021
Tel: (954) 239-0280
Fax: (954) 239-0281
ekomlossy@faruqilaw.com